**Carl A. TANGNER, Appellant,**

**v.**

**OKLAHOMA CITY, Appellee.**

**No. M–74–498.**

Court of Criminal Appeals of Oklahoma.

May 13, 1975.

3. Day v. State, 291 A.2d 286 (Del.1972).

Wendell E. Wightman, Oklahoma City, for appellant.

Walter M. Powell, Municipal Counselor, Edmond F. Geary, Jr., Asst. Municipal Counselor, Oklahoma City, for appellee.

## OPINION

BLISS, Judge:

Appellant, Carl A. Tangner, hereinafter referred to as defendant, was charged, tried and convicted in the Municipal Court of Record, Oklahoma City, Oklahoma, Case No. A–27276, for the offense of Driving Under the Influence, in violation of Oklahoma City Municipal Ordinance No. 3478. The jury fixed his punishment at a fine of One Hundred ($100.00) dollars, and from said judgment and sentence a timely appeal has been perfected to this Court.

The State's only witness at trial· was John M. Hull. He testified that he was a police officer and was so employed on the 19th day of November, 1973, when at approximately 11:30 p. m. while located at the 8000 block of North Western, Oklahoma City, he had occasion to observe a 1965 Chevrolet pickup traveling south on North Western in the right hand lane with the horn honking. He further testified that he observed the pickup make an abrupt sharp left turn from the right hand lane without signaling, thereafter, crossing three lanes of traffic. He stated that as soon as the pickup started making the turn he turned on his emergency equipment and pursued the pickup which stopped behind a bar. He stepped from his vehicle and approached the driver of the pickup and met him. He stated that upon meeting said driver he immediately noticed that his eyes were extremely bloodshot, watery and dilated; that he had a very strong order of alcoholic beverage about his breath and person and, further, that the driver swayed while he was standing still. He further testified that after asking the driver for his driver's license said driver began looking through his wallet in a fumbling manner characteristic of a person under the influence of alcohol. The driver handed him a fishing license, an insurance card, and

then another card, and finally Officer Hull had to point out the driver's license. He stated that the driver's speech was mush-mouthed with a thick-tongued accent. He testified that in the course of his experience as a police officer he had occasion to observe people who were, in fact, under the influence of alcohol and that in his opinion the driver of the pickup was under the influence of alcohol to such a degree that he was violating Municipal Ordinance No. 3478. Thereafter, he identified, in court, the defendant as the individual who he had seen and observed on the night in question. He stated he advised the defendant of his Miranda Rights and asked the defendant if he had been drinking to which the defendant replied "one can and three quarts." He stated that while transporting the defendant to the mobile laboratory unit the defendant was partially out of the window on the passenger's side waving both his arms at a vehicle behind them. He told the defendant to quit waving his arms and the defendant replied, "that's all right" and that he was not going to do it and that he was not going to roll up his window. In order to avoid any hazards he pulled over and placed handcuffs on the defendant. The charge for which the defendant was placed under arrest was Driving Under the Influence of Alcohol.

On cross-examination Officer Hull testified that the weather on the night in question was warm and clear because the windows were rolled down. Thereafter, the parties stipulated that the 8000 block of North Western Street in its entirety is in fact located within the corporate limits of Oklahoma City.

The defendant took the stand to testify in his own behalf. He testified that on the 18th of November, 1973, he was taken into custody for driving under the influence of alcohol. He then related the following facts which surrounded his arrest that day. Being in the business of real estate sales, earlier that day he had been in Nichols Hills trying to close up a house because of rainy weather. Thereafter while driving south on Western, he saw a police car and honked his horn because a person in his business must rely on the police on many occasions. After passing the police vehicle, he pulled in behind a bar at which time he heard shrilling tires and saw the police vehicle in pursuit of him. The police vehicle pulled in behind the bar and the officer approached him. At this time he stated he was either out or halfway out of his pickup. The first thing the officer said to him was, "Give me your keys." And thereafter he was asked for his driver's license. He said the reason the officer asked him for his keys was that he was informed that he was going with the officer and that a wrecker was coming out. He testified the officer advised him he was being taken into custody before the officer had any opportunity to observe his speech, his walk or the condition of his eyes.

On cross-examination the defendant stated that on the day of his arrest he had pneumonia and, further, he had consumed about four beers, two quarts of ginger ale, 10 quarts or more of water, 20 cups of coffee, cheese and crackers and a candy bar.

John M. Hull was then called as a defense witness. The witness was asked whether or not, in this particular instance, a test was made for intoxication to which he replied in the negative.

On cross-examination Officer Hull further related that there was no chemical test made for alcoholic influence of the defendant because the defendant refused to take any type of chemical test. He then related that the date of this particular offense was November 18. He testified that the defendant requested a blood test be taken by his (defendant's) doctor, however, no test was made because the doctor did not come. He stated that he advised the defendant of the implied consent law and the card from which the officer read the implied consent law was admitted into evidence. He related that the defendant was offered a blood test or a breath test both of which were rejected by the defendant.

The defendant's first assignment of error alleges that the prosecution's evidence

was of sufficient variance from the information sought to be proved that the trial court committed reversible error in not sustaining the defendant's motion to quash and demur. The defendant's argument is premised upon the fact that the date on the Information was one day later than when the alleged events in question occurred.

In the case of Stanley v. State, 97 Okl. Cr. 92, 258 P.2d 690 (1953), when presented with a similar problem, this Court held in Syllabus 1:

"Unless time is a material ingredient of the offense, the precise time at which an offense was committed need not be stated in an indictment or information, and, if stated, a variance between the proof and the allegation as to the date is not material so long as the crime is proven within three years prior to the initiation of the prosecution."

We further note that in the instant case, after the trial had started, the prosecution was allowed to amend the Information from the 19th day of November to the 18th day of November, the latter being the date on which the defendant alleges the events in question occurred. Also the record reflects that the prosecution's evidence conformed to the amended date.

▇ In the light of the above, we fail to find the defendant was prejudiced nor did any error occur. See, 22 O.S.1971, § 304. Thus we find the defendant's first assignment to be without merit.

Defendant's second proposition asserts that the trial court committed prejudicial and reversible error in making comments to the jury concerning the implied consent law in Oklahoma. The first instance of which defendant now complains is reflected in the record as follows:

"THE COURT: I believe the officer read the admonition and it did follow the law. Which is to the effect that the defendant may elect to take the blood or breath test or may elect not to take any given by the law enforcement officers. But if he elects to take the enforcement test he has the right to have his physician to examine any aliquot part of the sample taken by the law enforcement officers. There is nothing in the law that indicates that the defendant may rely upon his own physician to take the test." (Tr. 99)

The second instance of which the defendant complains is as follows:

"MR. WIGHTMAN: . . . That is the reason they wrote this law, that is the reason they say if you want, with those alternatives you can lose your license for six months. Because you are given a choice, your own doctor. You don't have to trust some man in a van down here parked on a side street.

"MR. WILLIAMS: Your Honor, I am going to object, that is a misstatement of the law, you do have to trust some fellow in a van.

"THE COURT: I agree, it is a miss statement (sic) of the law.

"MR. WIGHTMAN: With the exception, Your Honor, that they have the alternative.

"THE COURT: That is the second time you have used that word, word you examine again and see if the word alternative appears on that card.

"MR. WIGHTMAN: You have the choice of either—(int.)

"THE COURT: The word 'alternative' does not appear.

"MR. WIGHTMAN: The word 'or' does Your Honor.

"THE COURT: All right, Ladies and Gentlemen of the jury, an oral instruction, I give you because this matter has been raised at this point.

"The law of the State of Oklahoma provides, that anyone who is lawfully under arrest for an offense of driving under the influence has the *option of taking* a breath test to determine the alcoholic content of their blood or has the option to refuse to take either test. In event of a refusal upon the filing of a proper paper by the arresting officer, action will be taken on the refusing parties (sic) driv-

ers (sic) license, Which could result in a revocation or suspension of the license. The law is written by the legislature and states the defendant has a choice between a breath test or a blood test. That those test[s] must be administered by qualified personel (sic). In the event of a blood test, it names a licensed physician Osteopathic Physician, nurse, or other qualified technician. The law then states if in addition, I believe that is a correct quote, in addition to the state's test, the defendant desires his own physician or other qualified technician to extract another sample, he has the right to do so. Or he may have his own technician or qualified physician test a part of the sample extracted by the state's technician. It is the intention of the law that the defendant under arrest either submit to the state's breath test, the State's blood test or refuse either of them. It is not the alternative of the defendant to select the State's breath test the State's blood test or in the alternative his own doctor's blood test. There is no alternative involved, it's in addition to. Not in the alternative of. Proceed.

"MR. WIGHTMAN: I would like to make an objection if I may. Come now the defendant in objection to the instruction per se that has been presented by the Court. For the reason it is untimely and for the reason that, oh, council (sic) believes it has left an erroneous impression with the jury, and has been prejudiced to the rights of the defendant. By an interpretation, a judicial interpretation of something that is to be interpreted and understood by a layman and that therefore the instructions by the Court is erroneous and should not have been a matter of consideration for the jury.

"THE COURT: All right. let me state the reason not included in my instruction. There is no test in this case, all the parties agree to that. The implied consent law is not applicable. Since there was no test taken, no test given, it is no part of the law suit. That is why it was not in my instructions. The only

reason I instructed the jury is because you have misstated the law to the jury. Now, proceed." (Tr. 124–126)

■ Corpus Juris Secundum states:

". . . The court has full power to call the attention of counsel while addressing the jury to what it believes to be the evidence; to correct and rebuke counsel for not staying within the record during the argument; to correct or admonish counsel when he attacks or incorrectly states the law in his *argument,* or when he discusses or assumes a condition of facts not shown by the evidence; . . ." (Emphasis added) (Footnotes omitted) 23 C.J.S. Criminal Law § 989.

■ The record reflects the trial court did not formally instruct the jury on the law of implied consent for the reason that, in the instant case, no test or tests of the defendant's alcoholic influence was made. Thus, we feel it was highly improper for the defense counsel, in his argument, to bring forth such law before the court. As a result of such argument, the court clarified the implied consent law which had been improperly brought before the jury. Thus, defendant cannot be heard to complain of the trial court's clarification of law which the defense counsel necessitated.

In light of the above, we find the trial court's comments to the instant case were not improper and thus we find the defendant's second proposition to be without merit.

■ The defendant alleges other error occurred, however, not being supported by any authority such allegations will not be considered. In the first Syllabus by the Court in Miller v. State, Okl.Cr., 321 P.2d 390 (1958), and many subsequent occasions, this Court has repeatedly held:

"It is necessary for counsel for plaintiff in error not only to assert error, but to support his contentions by both argument and the citation of authorities. Where this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, this court will not search the books for authorities to sup-

port the mere assertion that the trial court has erred."

See also, Collins v. State, Okl.Cr., 407 P.2d 609 (1965), and Sandefur v. State, Okl.Cr., 461 P.2d 954 (1969).

In conclusion, we observe the record is free of any error which would justify modification or reversal. The judgment and sentence is accordingly, affirmed.

BRETT, P. J., and BUSSEY, J., concur.